THE CHINOOK.

(District Court, W. D. Washington, N. D.	July 7, 1915.)

No. 2972.

SEAMEN ⬥⟹26—LIBEL FOR WAGES—EVIDENCE.
	Circumstantial evidence on a libel for wages *held* to show that the charter party, made to libelant, was abandoned by the parties, and that his services were rendered under a verbal understanding, at an agreed wage.
	[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 131–156; Dec. Dig. ⬥⟹26.]

In Admiralty. Libel by Samuel Y. Hall against the Steamship Chinook, with Maggie M. Hall as intervening libelant. On exceptions to conclusions of commissioner. Conclusions affirmed.

⬥⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Bronson & Robinson, of Seattle, Wash., for libelants.
Hastings & Steadman, of Seattle, Wash., for claimant.

NETERER, District Judge. Libelant alleges, in substance, that he was employed at an agreed wage of $110 per month, and that there is due him $550. Intervening libelant, Maggie M. Hall, alleges that from September 3, 1914, to February 5, 1915, she was employed as a cook upon the steamship at a wage of $35 per month, and that there is due her $175. Claimant, answering, denies all allegations in the libel, and alleges that libelant took possession of the steamship, her tackle, etc., under a charter party to operate same and to make repairs upon the vessel, pursuant to agreement, and denies in part the intervening libel, and alleges that between the dates named "said steamship Chinook was under charter to Samual Y. Hall, master, the husband of said intervening libelant, Maggie M. Hall, and said Maggie M. Hall knew all the terms and conditions of said charter, and under said charter it was the duty of said Samuel Y. Hall to pay for all labor and materials used in the repair and operation of said steamship Chinook, and the services performed by said Maggie M. Hall, if any, were performed entirely upon the faith and credit of the said steamship Chinook." The cause was referred to the commissioner, who took the evidence and reported conclusions. Exceptions have been filed to the conclusions of the commissioner, and the matter is now before the court on review.

The testimony shows that a charter party was signed on August 22, 1914, providing that libelant shall pay $150 for the first 30 days, $200 for the next 30 days, and $250 per month for each 30 days thereafter, and shall pay 75 per. cent. of the net earnings of the steamship, on the 15th and 30th day of each month, and agrees "to perform or cause to be performed all labor, and to furnish all material for repairs for use of the said steamer; * * * to pay all ship's papers, customs, charges, or like expenditures, free of cost to said first party, and to pay all bills for materials and labor other than wages before paying wages to the crew," and agrees to insure the boat for $8,000 within 30 days. Provision is made that, if the vessel is sold for not less than $8,000, libelant is to receive a "bonus" of 5 per cent. of the price of sale. "Time is made of the essence of this agreement," and "the parties hereto agree not to record this agreement," and, in the event that either party of them shall do so, "then and at that time this agreement shall become null and void, and of no effect"; and it is further provided that, "in the event said second party shall so record, then all moneys and services furnished by him shall revert to said first party as liquidated damages," the first party being the claimant. It is further provided that the agreement may be terminated in any event by either party giving 30 days' notice in writing.

Libelant contends that the charter party was abandoned, that he could not live up to it, and that he was employed and went to work under a verbal contract at the wage of $110 per month, and testifies that he was authorized by the claimant to employ his wife to cook for the men employed in and about the vessel at $35 per month. The attorneys for each party agree that the only question involved is whether the services were rendered under the charter party.

A careful reading of the evidence convinces me that, whatever the legal right of the parties, the agreement is a decidedly one party affair. The testimony shows that whatever determination is to be reached must be concluded from what the parties did, as the statements of the parties are contradictory upon every material fact. Hall contemplated the operation of the vessel, from the inquiries made by him as disclosed by disinterested parties. He was a man without means. This was known to claimant's representatives. He had followed the sea for many years. The repairs necessary to be made upon the vessel were estimated by claimants in the testimony at $1,200. Claimant paid out in repairs, so it contends, approximately $3,000. The intervening libelant, Mrs. Hall, continued performing labor and services for the period claimed, less 18 days. Hall at no time paid any of the moneys required to be paid by him, the first payment of which was to be made for the 30 days succeeding August 22, 1914. He never paid for any material that was used in repairing the vessel. He paid none of the men who were employed in and about the vessel. He obtained no insurance. All claims for materials were paid by the claimant, and the claim of another intervening libelant in this proceeding was paid prior to the submission of testimony upon this issue. The claimant received the benefit of all of the material which it paid for, and of the labor and services for which it compensated the parties. It received the benefit of libelant's labor in the repair of the vessel.

In view of the stipulations in the charter party, the financial status of the parties, considered with relation to the obligation claimed to have been entered into and assumed, taken with the beneficial results to the respective parties, and the amount of the repairs with relation to the estimated cost, all as disclosed by the evidence, I am forced to the conclusion that the work that was done by libelant, and the improvements that were made upon this vessel, were made, not pursuant to the charter party, but pursuant to a verbal understanding between the parties. Hall and claimant must have known that libelant could not carry out such an agreement. Libelant testifies that he told Bateman, the agent of the company, that he could not do so, and that he would not continue under the contract, and that the agent of claimant told him to proceed with the work at a wage of $110 per month, and he did so continue until the work was completed. On the 3d of February, when the libelant ceased work under the charter party, he would, under the charter party, have been indebted, aside from the value of his own labor and that of his wife, in the sum of $3,000, claimed to have been expended by claimant for material and work, and $1,100 for the monthly rentals for the months of September to January, inclusive, or a total of $4,100, and under the provisions of the charter party it could have been terminated by the recording of the agreement upon the part of claimant, or upon 30 days' notice. Libelant would not have placed $3,000 on the improvements under the charter party, when the estimate placed by the claimant was $1,200, nor have employed the time in making repairs so that rental to the amount of $1,100 would have accrued. It is not reasonable to presume that any mature mind would so operate, and in view of the testimony I think the only reasonable construction to be placed upon the evidence and the acts of the par-

ties is that the charter party was abandoned and the work done under the verbal understanding, as contended for by libelant.

The conclusion of the commissioner is affirmed, less 18 days' work credited to Mrs. Hall by the commissioner. A decree may be presented.